UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

**NOT FOR PUBLICATION**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |
| In re: | |
| BERNARD L. MADOFF, | |
| Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff, | Adv. Pro. No. 10-05348 (CGM) |
| Plaintiff, | |
| v. | |
| NOMURA INTERNATIONAL PLC, | |
| Defendants. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:   David Sheehan
      Matthew D. Feil
      Frank M. Oliva

Andrew M. Serrao

*Attorneys for Defendant Nomura International PLC*
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022-6069
By:    Jeffrey Resetarits
       Randall Martin


**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Nomura International PLC ("Nomura"), motion

to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L.

Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property. Nomura seeks dismissal for lack of personal

jurisdiction.  For the reasons set forth herein, the motion to dismiss is denied.

<u>**Jurisdiction**</u>

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).  This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012.  In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision.  Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.  *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir.

2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on December 8, 2010.  (Compl., ECF[1] No. 1).  The

Trustee filed an amended complaint on June 13, 2022.  (Am. Compl., ECF No. 121).  Via the

amended complaint ("Amended Complaint"), the Trustee seeks to recover $34,074,372 in

subsequent transfers made to Nomura.  (*Id.* ¶ 2).  Nomura is a corporation organized under the

laws of the United Kingdom and its principal place of business is in the United Kingdom.  (*Id.* ¶

24).

The subsequent transfers were derived from investments with BLMIS made by Fairfield

Sentry Limited ("Fairfield Sentry") and Fairfield Sigma Limited ("Fairfield Sigma")

(collectively, the "Fairfield Funds").[2]  (*Id.* ¶¶ 99, 104).  Fairfield Sentry and Fairfield Sigma are

considered "feeder funds" of BLMIS because the intention of the funds was to invest in BLMIS.

(*Id.* ¶ 3).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants, including Fairfield Sigma to avoid and recover fraudulent

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary
proceeding 12-1195-cgm.
[2] The Trustee has filed a separate adversary proceeding against Nomura to address transfers Nomura received from
Harley International (Cayman) Ltd. This decision addresses only the transfers Nomura received from the Fairfield
Funds.

transfers of customer property in the amount of approximately $3 billion.  (*Id.* ¶ 92).  In 2011, the Trustee settled with Fairfield Sentry, Fairfield Sigma, and related defendants.  (*Id.* ¶ 93).  As part of their settlement, Fairfield Sentry and Fairfield Sigma consented to judgments in the amounts of $3.054 billion and $752.3 million, respectively.  (Consent Js., 09-01239-cgm, ECF Nos. 109–10).  Only $70 million has been paid to the BLMIS customer property estate.  (Settlement Agreement, 09-01239-cgm, ECF No. 169).  The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Defendant argues that the Trustee has failed to plead personal jurisdiction.  The Trustee opposes the motion to dismiss.  For the reasons set forth herein, the motion to dismiss is denied.

## Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction.  (Mem. L., ECF No. 125).  In the Complaint, the Trustee argues that Defendant purposefully availed itself to the laws of the United States and New York.  (Am. Compl. ¶¶ 29–51, 61).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the

motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same). In the absence of discovery, "a plaintiff's prima facie showing of jurisdiction 'may be established solely by allegations.'" *Paroni v. GE UK Holdings Ltd.*, 2021 U.S. Dist. LEXIS 148930 (N.D.N.Y. 2021) (quoting *Ball*, 902 F.2d at 197).

In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Defendant "invested in the Fairfield Funds with the specific purpose of having funds invested with BLMIS in New York and profiting therefrom." (Am. Compl. ¶ 31). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining that an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr.

S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v.*

*Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in

the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen*

*Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward*

*Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594

B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific
> jurisdiction over a nonresident defendant.  First, the defendant must have
> purposefully availed itself of the privilege of conducting activities within the
> forum State or have purposefully directed its conduct into the forum State.
> Second, the plaintiff's claim must arise out of or relate to the defendant's forum
> conduct.  Finally, the exercise of jurisdiction must be reasonable under the
> circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the

privilege of doing business in the forum and could foresee being haled into court there." *Charles*

*Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's

contacts with the forum state may be intertwined with its transactions or interactions with the

plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an

insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150

(2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or

attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific

jurisdiction."  *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by

knowing, intending and contemplating that the substantial majority of funds invested in Fairfield

Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

<u>Minimum Contacts</u>

In the Complaint, the Trustee alleges that Nomura "invested in the Fairfield Funds with the specific purpose of having funds invested with BLMIS in New York" and that Nomura knew that the Fairfield Funds invested substantially all of their assets with BLMIS in New York. (Am. Compl. ¶ 31–32, ECF No. 126). The Trustee has also alleged that Fairfield Sentry invested almost all of its assets in BLMIS. *See* 09-01239 Compl. ¶ 228 ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 96, of this Complaint).

The Trustee has alleged that Nomura signed subscription agreements with the Fairfield Funds and that each time they signed Defendant affirmed that they read the fund's private placement memoranda. (*Id.* ¶ 33). Based on Nomura having acknowledged reading the private placement memoranda, the Trustee has alleged that Nomura knew it was transacting business in New York in connection with its investments in the Fairfield Funds. (*Id.* ¶¶ 34–37, 39). The private placement memoranda alerted Nomura that "BLMIS served as the investment advisor, prime broker, and actual custodian of the assets in Sentry's BLMIS investment advisory accounts. (*Id.* ¶¶ 34). The private placement memoranda alerted Nomura that returns would be earned by execution of BLMIS's split strike conversion strategy in New York, which involved United States securities, options and treasury bills and that BLMIS played a critical role in New York on behalf of the Fairfield Funds. (*Id.* ¶¶ 35, 37, 39).

The Trustee also alleges that by executing the subscription agreements with Fairfield

Sentry and Fairfield Sigma, Nomura submitted to the jurisdiction of New York as the agreement

required Defendant to "irrevocably submit to the jurisdiction of New York courts" and agree

"that any suit, action or proceeding . . . with respect to this [a]greement and the [f]und may be

brought in New York." (*Id.* at ¶ 44). Nomura also entered into a non-disclosure agreement with

FGG to receive non-public information about Fairfield Sentry. (*Id.* ¶ 51). This agreement also

contained New York choice of law and jurisdiction provisions:

> This Agreement shall be governed by, and construed in accordance with, the laws
> of the State of New York, without reference to its conflict of law principles. Each
> party hereby irrevocably and unconditionally consents to submit to the
> jurisdiction of the courts of the State of New York for any actions, suits or
> proceedings arising out of or relating to this Agreement and the transactions
> contemplated hereby . . . .

(*Id.*). Though these agreements do not, alone, give this Court jurisdiction over Nomura as

discussed infra in footnote two, the agreements show that Defendant was willing to, and knew

that it could, face litigation in New York courts.

The Trustee has alleged that Nomura used New York bank accounts to receive

redemption payments from and remit subscription payments to Fairfield Sentry. (*Id*. ¶ 45).

Nomura maintained a bank account at Bank of America in New York. (*Id.*). The Trustee alleges

that Nomura directed Sentry to send redemption payments to its Bank of America account in

New York and that Nomura sent subscription payments to Sentry's New York. (*Id.* ¶ 46–47).

Those funds were ultimately deposited into BLMIS's JPMorgan Chase account in New York.

(*Id.* ¶ 47).

Where a defendant chooses to use a United States bank account, exercising personal

jurisdiction over the defendant for causes of action relating to those transfers is constitutional.

*Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71

(S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640

B.R. 604, 618 (S.D.N.Y. 2022) (stating that a bank submits to personal jurisdiction in the United

States when it is "free to accept or reject the proposed terms" and still chooses to use a United

States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at

*6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based

solely on defendant's use of New York account to receive payment at issue: "receiving

Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over

[Defendant]."); *HSH Nordbank AG N.Y. Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL

2921875, at *4 (S.D.N.Y. July 18, 2012) ("District courts in this Circuit have upheld personal

jurisdiction based upon a defendant's use of a correspondent bank account in New York where

the use of that account was held to lay at the very root of the plaintiff's action.") (quoting *Licci

ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 66 (2d Cir. 2012)); *Dandong v.

Pinnacle Performance Ltd.*, 966 F. Supp.2d 374, 382–83 (S.D.N.Y. 2013) (same).

   Further, the Trustee has alleged that Nomura communicated via email and telephone

FGG in New York regarding Nomura's investments with BLMIS through the Fairfield Funds.

(*Id.* ¶ 49). The Trustee has alleged that Nomura personnel traveled to New York and met with

FGG personnel to discuss Nomura's investments with BLMIS through the Fairfield Funds.

Nomura even leveraged its access to BLMIS in marketing materials to attract investors and

"touted [BLMIS] as generating 'remarkably consistent' returns through the purchase and sale of

S&P 100 Index equities, options, and United States Treasury Bills." (*Id.* ¶ 40).

   The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction over Nomura. *Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A.*, 722 F.3d 81,

85 (2d Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to

jurisdiction, physical entry into the State—either by the defendant in person or through an agent,

goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S.

277, 285 (2014). Defendant "intentionally tossed a seed from abroad to take root and grow as a

new tree in the Madoff money orchard in the United States and reap the benefits therefrom."

*Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012).

Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear*

*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.*

(*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with

the jurisdiction that relate to the cause of action are more substantial, however, it is not

unreasonable to say that the defendant is subject to personal jurisdiction even though the acts

within the state are not the proximate cause of the plaintiff's injury.") (internal quotations

omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it

received from the Fairfield Funds. (Am. Compl. ¶¶ 99–107, ECF No. 121). These allegations

are directly related to their investment activities with BLMIS via the Fairfield Funds. *BNP*

*Paribas S.A.,* 594 B.R. at 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other

payments the defendants received as direct investors in a BLMIS feeder fund arose from the

New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendants, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. *Id.* at 477.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel and intentionally invested in the Fairfield Funds. Further, Defendant held bank accounts in New York and submitted to the jurisdiction of New York courts' when it signed subscription agreements with the Fairfield Funds.[3] (Am. Compl. ¶ 44–47, 51). The forum and

---

[3] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam* (*In re Fairfield Sentry Ltd.*), Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement

the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And by alleging that Defendant used a New York bank account, the Trustee has met his burden of alleging jurisdiction over each transfer that received through that New York bank account. As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy into feeder funds that placed all or substantially all of their assets with Madoff Securities, they knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019). The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds subsequent transfers at issue in this Complaint.

<u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is denied. The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).

/s/ Cecelia G. Morris

Dated: April 19, 2023
Poughkeepsie, New York

Hon. Cecelia G. Morris
U.S. Bankruptcy Judge



Page **12** of **12**